UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAMON HARDIMAN, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 1:18-cv-00348-MJD-TWP ) |
| CHIEF OF THE INDIANAPOLIS METROPOLITAN POLICE DEPARTMENT, et al., | ) ) ) ) ) |
| Defendants. | ) |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants' motion for summary judgment, [Dkt. 68], and Plaintiffs' motion for partial summary judgment, [Dkt. 71]. The motions are fully briefed and the Court, being duly advised, **GRANTS** Defendants' motion and **DENIES** Plaintiffs' motion with regard to Plaintiffs' federal claims.[1] The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and **REMANDS** those claims to the Marion Superior Court.

**I. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[1] The Court notes that Plaintiffs do not assert any federal claims against the Chief of the Indianapolis Metropolitan Police Department; rather, Plaintiffs only assert certain of their state law claims against that Defendant under the theory of *respondeat superior*. *See* [Dkt. 25]. Thus, the use of the term "Defendants" herein refers to the Defendants other than the Chief of Police.

entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court must "view the facts in the light most favorable to the nonmoving party, and draw all reasonable inferences in his favor." *Pack v. Middlebury Cmty. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021) (citing *McAllister v. Innovation Ventures*, 983 F.3d 963, 967 (7th Cir. 2020)).

> Summary judgment is a critical moment for a non-moving party. It must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). Inferences supported only by speculation or conjecture will not suffice. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721-22 (7th Cir. 2018). Neither will the mere scintilla of evidence. *Grant*, 870 F.3d at 571.

*Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, "as it is not the court's job to 'scour the record in search of evidence to defeat a motion for summary judgment.'" *Hildreth v. Butler*, 960 F.3d 420, 429 (7th Cir. 2020), *cert. denied,* 141 S. Ct. 1527 (2021) (quoting *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)).

## II. Facts Relevant to Plaintiffs' Federal Claims

Plaintiffs assert that Defendants violated their Fourth Amendment rights. The material facts of record relevant to that claim, viewed in the light most favorable to Plaintiffs, are as follow.

Defendants Nickolas Smith, Michael McWhorter, and Paul Bellows were, at all relevant times, officers with the Indianapolis Metropolitan Police Department ("IMPD"). On August 28, 2017, Defendants were working their usual beat. [Dkt. 69-1 at 1, Dkt. 69-4 at 1, Dkt. 69-5 at 1.][2]

---

[2] Plaintiffs move to strike the affidavits submitted by Defendants in support of their motion for summary judgment "because each of the affidavits were signed by said affiants **after** the Court's discovery deadline of February 12, 2021" [Dkt. 74 at 1 n.1.] Plaintiffs argue that they "relied upon Defendants abiding by the Court's order; permitting a party to introduce additional

2

While on patrol, Smith noticed a white Cadillac that was parked facing the wrong way and within thirty feet of a stop sign in violation of local ordinances. [Dkt. 69-1 at 1.] While he waited for McWhorter and Bellows to arrive at the scene, Smith "walked to the car to see if [it] looked operable, checked the plate to see if it matched the car, and prepared information for a parking citation, making sure I had a ticket book on scene." *Id.* at 2. The license plate check revealed that the car was registered to Plaintiff Bobby Lee Houston, Jr. *Id.* Smith did not know Houston, and Houston was not present. *Id.*

IMPD General Order 7.3 governs the towing and impounding of vehicles at the direction of IMPD officers. *See* [Dkt. 69-6]. General Order 7.3 cites to Section 611-203 of the *Revised Code of the Consolidated City and County Indianapolis/Marion, Indiana* as providing that a vehicle may be declared a public nuisance if it is "parked . . . upon any street or public place in the city in violation of any of the provisions of this Code or of any statute of the state." *Id.* at 1. Section 611-204 of the *Revised Code* provides that an officer "upon discovering a vehicle constituting a public nuisance, may cause the vehicle to be impounded as authorized by this article." https://library.municode.com/in/indianapolis_-_marion_county/codes/ code_of_ordinances?nodeId=TITIIIPUHEWE_CH611MOVE (last visited June 10, 2021). General Order 7.3 further provides that a vehicle may be towed and impounded for a variety of reasons, including "[v]iolating parking or other special restrictions." [Dkt. 69-6 at 2.] Indiana Code Section 9-21-16-5 prohibits parking within thirty feet of a stop sign. Indiana Code Section 9-21-16-7 provides that "a vehicle stopped or parked upon a roadway where there is an adjacent

---

evidence outside the discovery deadline renders said deadline meaningless." *Id.* Plaintiffs' argument is without merit. The discovery deadline is entirely irrelevant to affidavits created and submitted in support of or in opposition to motions for summary judgment.

curb must be stopped or parked with the right-hand wheels of the vehicle parallel with and within twelve (12) inches of the right-hand curb." It is undisputed that the Cadillac was violating both of these provisions.

Smith decided to have the Cadillac towed and impounded "because it violated ordinances, prevented vehicles from properly stopping at the stop sign, and blocked the flow of traffic."[3] [Dkt. 69-1 at 2.] Smith "knew that [IMPD's] General Orders allow [him] to impound a vehicle when it violates ordinances and that police officers have community caretaking responsibilities." *Id.* at 1. Accordingly, he radioed for a tow truck.

Once McWhorter and Bellows arrived, Smith wrote a ticket, placed it on the windshield, and began to conduct an inventory search of the Cadillac.[4]

The Cadillac was parked in front of the home of Plaintiff Damon Hardiman and his godmother, Leticia Styles. A neighbor called Styles to tell her that police officers were outside her home going through the Cadillac. [Dkt. 69-3 at 21.] Styles, in turn, called Hardiman, who

---

[3] Hardiman testified at his deposition that the Cadillac was not blocking the street and cars could safely pass by on the street. [Dkt. 69-3 at 43.] Thus, there is a dispute regarding whether the vehicle actually blocked the flow of traffic. However, "even at the summary-judgment stage not every purported factual dispute precludes summary judgment. A factual dispute must be material and genuine." *Alston v. City of Madison*, 853 F.3d 901, 910 (7th Cir. 2017) (citing *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012)). "In determining whether the nonmovant has identified a 'material' issue of fact for trial, we are guided by the applicable substantive law; '[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *McGinn v. Burlington Northern R.R. Co.,* 102 F.3d 295, 298 (7th Cir. 1996)). Whether the Cadillac was actually impeding traffic is not a material fact in this case, however, because there is no dispute that the manner in which the Cadillac was parked violated the other parking provisions identified by Defendants, and those violations rendered the Cadillac a public nuisance under the relevant ordinance.

[4] Defendants assert in their statement of facts that there were no valuables in the Cadillac when the inventory was conducted. While Hardiman disputes this fact, *see* [Dkt. 74 at 2], the dispute is not material to the issues resolved by the Court herein.

was driving home from school at the time. *Id.* at 17. Hardiman arrived on the scene with a friend, Chris Robinson. At that time, the tow truck had not yet arrived.

When he arrived, Hardiman saw Defendant Smith rummaging through the driver's side of the Cadillac. Hardiman's possessions, which included school supplies, books, papers, and clothing, were on the ground outside of the vehicle. Hardiman informed Smith that the Cadillac was his and asked that he or Robinson be permitted to move the vehicle so that it would not need to be towed. *Id.* at 47-49. Robinson told Smith that he would move the vehicle and offered to show him his driver's license. [Dkt. 73-10 at 1.] However Smith told Hardiman that only the owner of the vehicle could move it. [Dkt. 69-3 at 47-48.] Hardiman called the registered owner of the car, Houston, who is Hardiman's brother, but Smith refused to allow Houston to come to the scene to move the car. *Id.* at 48-49. Therefore, the car was towed to IMPD's impound lot, where Hardiman had to pay to retrieve it.[5]

### III. Discussion

Plaintiffs argue that the towing and impounding of their vehicle constituted an unreasonable seizure under the Fourth Amendment. Defendants argue that they are entitled to qualified immunity on this claim because the seizure of the vehicle did not violate any clearly established right.

---

[5] The Cadillac was inoperable when Plaintiffs went to pick it up from the impound lot because the parking brake would not release. In addition, the glove box locking mechanism was broken. Plaintiffs allege that Smith intentionally broke the parking brake and that Defendants broke the glove box during the search of the vehicle. Plaintiffs identify disputed facts regarding those allegations; however, those facts are not material to Plaintiffs' Fourth Amendment claims.

### A. Qualified Immunity Standard

"'Public officials are immune from suit under 42 U.S.C. § 1983 unless they have "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."'"  *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 518 (7th Cir. 2020), *cert. denied sub nom. Dix v. Edelman Fin.*, No. 20-1247, 2021 WL 1952074 (U.S. May 17, 2021) (quoting *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (in turn quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014))).  In addressing the question of qualified immunity in the context of a motion for summary judgment, the Court must "evaluate '(1) whether the facts, taken in the light most favorable to the plaintiff[ ], show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation.'"  *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (quoting *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009)).  "The latter inquiry is often dispositive and may be addressed first."  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).  The Court will do so here.

"To be 'clearly established,' a constitutional right 'must have a sufficiently clear foundation in then-existing precedent.'"  *Id.* (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)).

> An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it,  meaning that existing precedent placed the statutory or constitutional question beyond debate. . . .  Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Dix*, 978 F.3d at 518 (citations and internal quotation marks omitted).  Because "[t]he principle of fair notice pervades the doctrine" of qualified immunity, "clearly established law cannot be framed at a 'high level of generality.'"  *Campbell*, 936 F.3d at 545 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

6

> A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established. Existing caselaw must dictate the resolution of the parties' dispute, so while a case directly on point isn't required, precedent must have placed the constitutional question beyond debate. Put slightly differently, a right is clearly established only if every reasonable official would have understood that *what he is doing* violates that right.

*Id.* at 545-46 (internal citations, quotation marks, and alterations omitted).

"The plaintiff carries the burden of defeating the qualified immunity defense."

*Chasensky v. Walker*, 740 F.3d 1088, 1095 (7th Cir. 2014) (citation omitted).

> To meet his burden on the second prong, a plaintiff must "show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Chan v. Wodnicki*, 123 F.3d 1005, 1008 (7th Cir. 1997). This requirement does not mean that a plaintiff must be able to point to a case "on all fours" with the defendant officer's misconduct. *See Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). But there must be settled authority that would cause him to understand the illegality of the action. *See Mullenix v. Luna*, ___ U.S. ___, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015).

*Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017).[6]

### B. *United States v. Duguay*

Plaintiffs assert that under Seventh Circuit precedent,[7] specifically *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996), it was clearly established that the Fourth Amendment

---

[6] Analogous precedent is not always required; there are "rare cases . . . where the state official's alleged conduct is so egregious that it is an obvious violation of a constitutional right." *Leiser v. Kloth*, 933 F.3d 696, 702 (7th Cir. 2019). Plaintiffs do not argue that this is such a case.

[7] Defendants note that "[t]he Supreme Court has questioned whether anything short of its own precedent could constitute clearly established law." [Dkt. 75 at 8 n.2] (citing *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) ("assuming without deciding that a court of appeals decision may constitute clearly established law for purposes of qualified immunity") (in turn citing *City and Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1776 (2015) (same)); *Reichle v. Howard*, 132 S. Ct. 2088, 2094 (2012) ("Assuming for the sake of argument that a controlling circuit precedent could constitute clearly established federal law in these circumstances.")). However, the Seventh Circuit has instructed that "[w]e first look to whether the Supreme Court

7

required Defendants to permit Robinson to move the Cadillac as Hardiman requested instead of towing it. Thus, a close examination of *Duguay* is critical to Plaintiffs' argument.

The plaintiff in *Duguay* was a passenger in a vehicle driven by his girlfriend, Gloria Vaughn, in Alton, Illinois. A deputy marshal on the scene associated the vehicle with Duguay based upon a previous investigation the deputy had been involved with. Vaughn parked the vehicle at the apartment complex in which she lived and she and Duguay began walking toward the apartments. The pair were approached by three United States deputy marshals who believed they had pulled into the parking lot to avoid a police roadblock. An altercation ensued between Duguay and one of the marshals, resulting in Duguay's arrest for assault. An Alton police detective informed Vaughn that he was going to impound the car; when Vaughn refused to surrender the vehicle's keys, she was arrested for obstruction of justice. The vehicle was then impounded and inventoried. A substantial quantity of crack cocaine was found in the trunk of the vehicle, which led to Duguay being charged with possession with the intent to distribute narcotics, among other charges.

Duguay moved to suppress the crack cocaine, arguing, *inter alia*, that the impoundment and resulting search of the vehicle violated the Fourth Amendment. The district court denied the motion to suppress, and Duguay was convicted. On appeal, the Seventh Circuit reversed. The court gave "two independent reasons" for so holding. *Duguay*, 93 F.3d at 351. One of them—that the police did not articulate a constitutionally legitimate rationale for impounding Duguay's car—forms the basis of Plaintiffs' argument in this case. The detective who decided to impound the car testified that the police department

---

**or this circuit** has previously held that conduct analogous to the present case violates the right at issue. *Leiser*, 933 F.3d at 702 (citation omitted) (emphasis added).

>tow[ed] vehicles after the person in control of the vehicle or the owner is arrested . . . for the protection of the owner of the vehicle and for the liability purpose of the Alton Police Department. We're not about to leave a vehicle parked on Dooley Drive, especially after we have arrested the occupant of it. The vehicle could be vandalized, stolen, a number of things, in which case the Alton Police Department would be liable for the condition of the vehicle.

*Id.* at 352. Another detective testified that "if a person is arrested in a vehicle, we tow the vehicle." *Id.* The court found that "while protection of the arrestee's property and municipal liability are both valid reasons to conduct an inventory after a legal impoundment, they do not establish the *a priori* legitimacy of the seizure." *Id.*

First, the court noted that "[t]he police do not owe a duty to the general public to remove vulnerable automobiles from high-crime neighborhoods" and, "[s]imilarly, the police owe no duty to incarcerated persons to protect personal property from private injury." *Id.* at 352-53. Further, the court noted that since "[t]he state owes no legal duty to protect things outside its custody from private injury" and "there is no tort for omissions by state actors, the assertion of custody over Duguay's automobile could only increase the risk of liability." *Id.* at 353. Plaintiffs rely on the next passage in the opinion, which reads as follows:

>Furthermore, impoundment based solely on an arrestee's status as a driver, owner, or passenger is irrational and inconsistent with "caretaking" functions. Under either Detective Waldrup or Detective Adams' policies, towing is required any time the arrestee is carted off to jail, regardless of whether another person could have removed the car and readily eliminated any traffic congestion, parking violation, or road hazard.
>
>Duguay's car was impounded after his arrest, despite the fact that Gloria Vaughn had driven the car, had possession of the keys, and was prepared to remove the car from the street. There was unrefuted evidence that Duguay's brother William Coles, who is another son of the title owner, was also present at the time of the arrest.
>
>The touchstone of Fourth Amendment analysis is "reasonableness." *See, e.g.*, *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible

purpose for impoundment is for the "caretaking" of the streets. While it is eminently sensible not to release an automobile to the compatriots of a suspected criminal in the course of a criminal investigation, if the purpose of impoundment is not investigative, and in the absence of probable cause, we do not see what purpose denying possession of the car to a passenger, a girlfriend, or a family member could possibly serve. *See, e.g.*, *United States v. Pappas,* 735 F.2d 1232 (10th Cir. 1984).

The decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots.

*Id.* (internal record citation omitted).

### C. Analysis

Plaintiffs' entire argument in response to Defendants' qualified immunity argument is that *Duguay* clearly established that Defendants were "required to allow an on scene licensed driver [Robinson] to simply move the vehicle" instead of having it towed, and that the failure to do so violated the Fourth Amendment. [Dkt. 72 at 13.] Certainly some of the broad language in *Duguay*, quoted above, supports Plaintiffs' Fourth Amendment claims if it is read in isolation. However, there are key differences between the facts of this case and the facts of *Duguay* that lead the Court to conclude that *Duguay* did not, as Plaintiffs argue, clearly establish that it was constitutionally impermissible to have the Cadillac towed under the circumstances.

As an initial matter, the Court notes that, while Plaintiffs assert in their Second Amended Complaint that both the search and the seizure violated the Fourth Amendment, [Dkt. 25 at 8], Plaintiffs make no specific argument with regard to the search itself in response to Defendants' motion for summary judgment. Indeed, their sole argument regarding their Fourth Amendment claims in their response brief is the following:

As Plaintiffs explained in their Brief in Support of Their Motion for Partial Summary Judgment, Dkt. 72, they are entitled to judgment as a matter of law on their Fourth Amendment claims because Officer Smith's impoundment of their

vehicle was unreasonable given that he refused to allow an on-scene licensed driver to simply move the car a required by Ind. Code § 9-21-16-3,[8] IMPD General Order 7.3,[9] and *United States v. Duguay*, 93 F.3d 346 (7th Cir. 1996).

[Dkt. 74 at 3-4] (footnotes added).[10]  In the referenced brief, Plaintiffs argue that "Officer Smith's unlawful seizure of the Cadillac renders the subsequent search unreasonable under the Fourth Amendment."  [Dkt. 72 at 2.]

---

[8] Indiana Code § 9-21-16-3 provides:

> Whenever a police officer finds a vehicle standing upon a highway in violation of this chapter, the officer may require the person driving the vehicle or other person in charge of the vehicle to move the vehicle to a position off the paved, improved, or main traveled part of the highway.  If:
>
> > (1) a person directed by an officer fails or refuses to move the vehicle; or
> > (2) the vehicle is unattended;
>
> the officer may provide for the removal of the vehicle to the nearest available garage or other place of safety.

It is clear that this statute does not, as Plaintiffs suggest, set out the only circumstances under which an officer may have an improperly parked vehicle towed.  For example, imagine a scenario in which the person driving the vehicle does not have a valid driver's license.  Clearly the officer is not required to choose between directing an unlicensed driver to move the vehicle and leaving it illegally (and dangerously) parked.

[9] Plaintiffs point to a provision in IMPD General Order 7.3 that states that "[i]f a properly licensed owner or operator of a vehicle that is to be towed arrives on the scene of the violation prior to the vehicle being removed," the vehicle shall be released to the owner or operator unless certain exceptions apply.  Hardiman was not a properly licensed owner of the Cadillac, but he argues that Robinson was an "operator" of the vehicle.

[10] The Court notes that even assuming that Plaintiffs are correct that the cited statute and policy were violated by the towing of the Cadillac under the circumstances—something the Court is far from convinced of—that is irrelevant to the Fourth Amendment analysis, because

> § 1983 "protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).  Policies and procedures do not shed light on the reasonableness of an officer's behavior because, "even if they could be practically assessed by a judge, [such policies] vary from place to place and from time to time," and so "[w]e cannot accept that the search and seizure

Plaintiffs' argument ignores that fact that the decision to impound the Cadillac was made, and the search of the vehicle was conducted (at least in large part), prior to the arrival of Hardiman and Robinson at the scene. "The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota v. Opperman,* 428 U.S. 364, 369 (1976). Plaintiffs do not dispute that, at the time Smith made the decision to impound the Cadillac, he had the authority to do so because it was parked illegally and Plaintiffs were not present. In addition, "[s]earches conducted by the police prior to towing a car are 'lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property—and protecting the police from the owner's charging them with having stolen, lost, or damaged his property.'" *United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (quoting *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005)). Plaintiffs do not argue that Defendants failed to follow standard police procedures in conducting the search; their assertion that the search of the Cadillac violated the Fourth Amendment is premised entirely on their argument that the towing of the Cadillac was unconstitutional. Indeed, Plaintiffs' entire Fourth Amendment argument is premised on the presence of a licensed driver who could move the Cadillac; they point to no precedent that

---

protections of the Fourth Amendment are so variable." *Whren v. United States*, 517 U.S. 806, 815, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

*Est. of Biegert by Biegert v. Molitor*, 968 F.3d 693, 699 (7th Cir. 2020). Conversely, to the extent that Defendants complied with IMPD policy in deciding to tow the Cadillac, "that fact is important, [but] it is not dispositive for purposes of the Fourth Amendment. The existence of a police policy, city ordinance, or state law alone does not render a particular search or seizure reasonable or otherwise immune from scrutiny under the Fourth Amendment." *United States v. Cartwright*, 630 F.3d 610, 614 (7th Cir. 2010) (citations omitted).

suggests, let alone clearly establishes, that any actions that were taken by Defendants prior to Robinson's arrival on the scene violated the Fourth Amendment.

Indeed, that is one of the facts that distinguishes this case from *Duguay*. In *Duguay*, the decision to tow and impound the vehicle was made in spite of the fact that both the presumed owner of the vehicle and the woman who had been driving the vehicle were present. In addition, there is no dispute that the Cadillac was parked illegally and qualified as a public nuisance under the applicable ordinances and that Smith made the decision to have it towed because of that fact, while in *Duguay* the vehicle was not parked illegally and the officers gave no valid reason to have the vehicle towed, basing their decision only on the fact that the owner had been arrested and it was parked in a high crime area.

Most importantly, in *Duguay* the officers did not doubt Duguay's authority over the car,[11] while in this case, at the time Hardiman asked that Robinson be permitted to move the Cadillac, Defendants knew that Hardiman was not the registered owner of the car; indeed, they knew that Hardiman was not even a licensed driver. The Cadillac was registered to Houston, whose address—at least according to the vehicle registration—was several miles away from where the Cadillac was parked.[12] Defendant Smith explains his refusal to permit Robinson to move the vehicle as follows:

---

[11] It appears that Duguay's father actually held the title to the vehicle. *See Duguay,* 93 F.3d at 352 (noting that "Duguay was assumed to be the owner of the car—a proposition which was hotly disputed at the suppression hearing); *id.* at 353 (noting that "Duguay's brother William Coles, who is another son of the title owner, was also present at the time of the arrest"). However, the officers "associated" the vehicle with Duguay and did not base their decision to tow the vehicle on the fact that Duguay was not the titled owner. Therefore, the Seventh Circuit had no occasion in *Duguay* to consider the type of situation presented in this case.

[12] Defendants clearly were not required to wait for Houston to arrive on the scene to move the Cadillac. *See Cartwright*, 630 F.3d at 615 ("The Fourth Amendment does not require that the police offer these sorts of alternatives to impoundment.") (citing *Colorado v. Bertine,* 479 U.S.

> Hardiman did not have a license and was not on the vehicle's registration, so he could not move the vehicle or give permission for anyone to move it, as it is not his vehicle. I can't release it to someone who isn't on the registration, without the owner there giving permission. Then the owner could report it stolen. This is department policy.

[Dkt. 69-1 at 3.] Given this material difference between the facts in *Duguay* and the facts in this case, the Court finds that *Duguay* does not dictate a finding that the Defendants' refusal to permit Robinson to move the Cadillac instead of having it impounded violated the Fourth Amendment.

In so holding, the Court again recognizes that there are statements in the *Duguay* opinion that read as if they are establishing a broad rule that arguably would apply to this case. However, the Supreme Court has long held that such broad rules are not appropriate in the Fourth Amendment context, instead holding

> that the "touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances. In applying this test we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry. Thus, in *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), we expressly disavowed any "litmus-paper test" or single "sentence or . . . paragraph . . . rule," in recognition of the "endless variations in the facts and circumstances" implicating the Fourth Amendment. *Id.,* at 506, 103 S.Ct., at 1329. Then, in *Michigan v. Chesternut,* 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), when both parties urged "bright-line rule[s] applicable to all investigatory pursuits," we rejected both proposed rules as contrary to our "traditional contextual approach." *Id.,* at 572-573, 108 S.Ct., at 1978-1979. And again, in *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), when the Florida Supreme Court adopted a *per se* rule that questioning aboard a bus always constitutes a seizure, we reversed, reiterating that the proper inquiry necessitates a consideration of "all the circumstances surrounding the encounter." *Id.,* at 439, 111 S.Ct., at 2389.

---

367, 373-74 (1987) (holding that the police need not give a motorist "an opportunity to make alternative arrangements" that avoid impoundment and inventory) and *United States v. Clinton,* 591 F.3d 968, 972 (7th Cir.) ("That Clinton's girlfriend, the owner of the car, could have been called to take possession of the car, is irrelevant.")). Plaintiffs do not argue otherwise.

14

*Ohio v. Robinette*, 519 U.S. 33, 39 (1996).  Given the Supreme Court's approach, the Court rejects Plaintiffs' argument that *Duguay* established a rule broad enough to encompass the specific circumstances faced by Defendants in this case.[13]

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citations omitted).  Plaintiffs have failed to demonstrate that, given all of the relevant facts known to Defendants, existing precedent placed "beyond debate" the question of whether having the Cadillac towed rather than permitting Robinson to move it violated the Fourth Amendment, given that Hardiman was not a licensed driver, neither Hardiman nor Robinson were the registered owners of the vehicle, and Defendants had not observed either operating the vehicle. Accordingly, the Court finds that Defendants[14] are entitled to qualified immunity on Plaintiffs' Fourth Amendment claims and therefore are entitled to summary judgment on those claims.

---

[13] The Court notes that Judge Posner recognized the breadth of the relevant language in *Duguay* in his dissent in *Cherry*, 436 F.3d at 778 ("Granted, we may have gone too far when we said in [*Duguay*] that 'the decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots.'").

[14] The Court has referred generally to "Defendants" throughout this discussion.  However, as noted above, no federal claim has been asserted against Defendant the Chief of the Indianapolis Metropolitan Police Department.  In addition, Defendants argue that neither Defendant McWhorter nor Defendant Bellows were "personally involved with the decision to impound the vehicle, so they cannot be liable for Fourth Amendment seizure." [Dkt. 70 at 10.]  The Court need not address this argument—which Plaintiffs do not respond to—in light of the Court's resolution of the qualified immunity issue in Defendants' favor.

## IV. State Law Claims

Defendants also move for summary judgment on Plaintiffs' remaining claims, all of which are premised on state law. The Court's jurisdiction over Plaintiffs' state law claims is based on 28 U.S.C. § 1367, which provides for the exercise of supplemental jurisdiction over claims based on state law that are closely related to the federal claims in a case. However, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Products N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (citation omitted); *see also Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019) ("Absent unusual circumstances, district courts relinquish supplemental jurisdiction over pendent state law claims if all claims within the court's original jurisdiction have been resolved before trial.") (citations omitted). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt. Co.*, 672 F.3d at 479 (citations and internal quotation marks omitted). The Seventh Circuit has

> identified certain circumstances that may displace the presumption, namely: (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* at 480 (citation omitted). None of those exceptions apply here. Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims asserted in Plaintiffs' Second Amended Complaint.

## V. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment [Dkt. 68] is **GRANTED** and Plaintiffs' motion for partial summary judgment [Dkt. 71] is **DENIED** as to Plaintiffs' Fourth Amendment claims.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims; those claims are **REMANDED** to the Marion County Superior Court.  **As required by 28 U.S.C. § 1447(c), the Clerk shall mail a certified copy of this remand order to the Clerk of the Marion County Superior Court**.

SO ORDERED.

Dated:  11 JUN 2021

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.